IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL JACKSON, #271414, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) CIVIL ACTION NO. 1:09-CV-1153-TMH | |
| | ) CIVIL ACTION NO. 1:09-CV-1173-TMH | |
| | ) [WO] | |
| | ) | |
| ANDY HUGHES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

These 42 U.S.C. § 1983 actions are before the court on complaints filed by Michael
Jackson ["Jackson"]. The claims remaining for disposition challenge the conditions of
confinement at the Houston County Jail and mail delivery procedures during Jackson's
incarceration in 2009.  ackson seeks declaratory relief and monetary damages for the
alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing
Jackson's claims for relief.  In these documents, the defendants adamantly deny Jackson's
allegations and assert that the consolidated complaints are due to be dismissed with respect
to all claims raised therein, except the claim regarding opening of purported legal mail,
because Jackson failed to exhaust an administrative remedy available to him at the Houston
County Jail.  The defendants further argue that Jackson is entitled to no relief on his mail

claim.

Pursuant to the orders entered in this consolidated cause of action and governing case law, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Order of March 23, 2010 - Court Doc. No. 41*; *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment where the evidence demonstrates that administrative remedies "are absolutely time barred or otherwise clearly infeasible."). Thus, this action is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact regarding the plaintiff's failure to exhaust his administrative remedies and the lack of a constitutional violation with respect to the mail claim.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits,

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Jackson is required to produce "sufficient [favorable] evidence" which would be admissible at trial demonstrating the proper exhaustion of administrative remedies with respect to the majority of his claims and entitlement to relief regarding the mail claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505,

4

2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a

6

reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Jackson fails to demonstrate a requisite genuine dispute of material fact regarding his failure to exhaust administrative remedies and the delivery of his mail so as to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Failure to Exhaust - Majority of Claims

Jackson presents a myriad of claims challenging the conditions of his confinement at the Houston County Jail in 2009. In response to the complaints, the defendants maintain that all of these claims, except the legal mail claim, are subject to dismissal because Jackson failed to exhaust the administrative remedy provided to him at the Houston County Jail prior to filing these complaints as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Specifically, the defendants maintain that Jackson did not properly exhaust the grievance procedure provided at the jail -- i.e., he did not file a grievance with respect to a specific claim and/or failed to appeal the response provided to a submitted

grievance.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Title 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement.  *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***."  *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings....  Construing § 1997e(a) to require

proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.  The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The record before the court establishes that the Houston County Jail provides a grievance procedure for inmate complaints. *Defendants' Exhibit A to the Affidavit of Commander Keith W. Reed - Court Doc. No. 40-2* at 6-7; *Defendants' Exhibit E to the Affidavit of Commander Keith W. Reed - Court Doc. No. 40-2* at 15 ("It is the policy of the Houston County Jail that inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.").  The relevant portion of the grievance procedure reads as follows:

Inmates may file only one grievance per calendar day.

The event the inmate is filing a grievance about must have occurred within three calendar days of the date of the grievance.  The inmate grievance must state the date the event occurred which is the basis for the grievance or the grievance will not be considered.

The Houston County Jail will have 30 days from the date of the grievance to investigate and reply to the inmate during which time the inmate shall not file another grievance about the same issue.

The inmate may appeal the response of the grievance to the Jail Commander within two calendar days of receipt of the grievance by completing a grievance appeal form.  The Jail Commander will have 30 calendar days to answer the appeal.

An inmate cannot file a first grievance directly to the Jail Commander.

*Defendants' Exhibit F to the Affidavit of Commander Keith W. Reed - Court Doc. No. 40-2*

at 16.

On March 23, 2010, the court entered an order allowing Jackson the opportunity to respond to the arguments made by the defendants in their special report.  *Court Doc. No. 41.*  In his response to the report, Jackson does not dispute his failure to exhaust the jail's administrative remedy on the relevant claims for relief. The court therefore concludes that the claims presented in this cause of action, with the exception of the legal mail claim, are subject to dismissal as the plaintiff failed to exhaust an administrative remedy available to him, which is a precondition to proceeding in this court on these claims.  *Ngo*, 548 U.S. at 87-94, 126 S.Ct. at 2384-2388.

It is undisputed that Jackson failed to file a grievance and/or appeal the grievance

decision with respect to each of the claims presented in this cause of action, except the legal mail claim, as required by the grievance procedure in effect at the Houston County Jail. The administrative remedy provided by the defendants is no longer available to Jackson.  Under these circumstances, dismissal of the unexhausted claims with prejudice is appropriate.  *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits ... properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## B.  Interference with Legal Mail

Jackson complains that jail officials opened correspondence he deemed "legal mail" outside his presence. The defendants maintain that they did not interfere with any outgoing mail submitted by Jackson; instead, they assert that officials did answer several inmate request forms -- internal forms used by inmates to request action by jail personnel -- submitted by Jackson in which he referenced contacting his attorney and a court clerk. *Defendants' Exhibit 1 (Affidavit of Commander Keith W. Reed) - Court Doc. No. 40-1* at 12-13.  In answering these requests, jail officials advised Jackson if he sought information

11

from an outside source he should prepare a letter addressed to the appropriate individual/entity. The defendants further assert that the mail clerk inspected all legal mail addressed to Jackson for contraband in his presence and then delivered the mail to him. *Id*. at 12. "All other mail (excluding legal mail) [was] opened by the jail's ... mail clerk and inspected for contraband before being sorted ... and [thereafter] passed out to [Jackson]." *Id*. Defendants maintain that they did not read any of Jackson's mail or refuse to process his mail. *Id*. Interference with legal mail implicates an inmate's rights of access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. The court will therefore address the instant complaint as raising each of the aforementioned claims.

1. <u>Access to Courts</u>. The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***....

12

[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined that *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his]

13

convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

The record in this case establishes that jail personnel provided Jackson access to legal materials during his confinement at the Houston County Jail and in no way inhibited his preparation, filing or processing of any legal causes of action. In addition, throughout the proceedings in this case, Jackson presented all required arguments and pleadings to this court using the mail system at the jail. Moreover, the record indicates that Jackson received all mail from this court without incident. Nothing in the record demonstrates that the actions about which Jackson complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Jackson has failed to come forward with any

evidence that the actions about which he complains deprived him of the capability of pursing claims in this or any other court. Consequently, Jackson does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on his access to courts claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage....").

2. <u>Free Speech</u>. Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Jail officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct.

15

1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804; *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986) ("In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821.").

Generally, inmates possess a First Amendment right to send and receive mail.  *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008); *Kaufman v. McCaughty*, 419 F.3d 678 685 (7th Cir. 2005); *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  "[An inmate] has a First Amendment free speech right [to send legal mail] separate and apart from his constitutional right of access to the courts." *Al-Amin*, 511 F.3d at 1333.  This right is, of course, subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators.  *Id.*

It is undisputed that jail personnel did not in any way interfere with plaintiff's

16

outgoing mail addressed to a court, court clerk or attorney.  In addition, the record establishes that all properly addressed outgoing mail prepared by the plaintiff was placed in the mail, and incoming mail addressed to the plaintiff was promptly delivered to him. Thus, to the extent that Jackson contends the defendants interfered with his right to send mail in violation of his First Amendment right to freedom of speech, he is likewise entitled to no relief and summary judgment is due be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  To the extent the defendants seek dismissal on exhaustion grounds of all claims except the claim of interference with legal mail, the defendants' motion for summary judgment be GRANTED due to the plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Houston County Jail.

2.  With respect to the claim alleging improper interference with legal mail, the defendants' motion for summary judgment be GRANTED.

3.  This case be dismissed with prejudice.

It is further

ORDERED that on or before November 21, 2011, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised

17

that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 7th day of November, 2011.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE